# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DR. MONICA A. PRICE, )
)
       Plaintiff, )
)
v. ) 1:23cv1102
)
DURHAM PUBLIC SCHOOLS, )
)
       Defendant. )

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on the "Motion to Dismiss Complaint" (Docket Entry 9)[1] (the "Dismissal Motion") filed by Durham Public Schools (the "Defendant"). For the reasons that follow, the Court (i) should deny the Dismissal Motion and (ii) will deem the "Complaint for a Civil Case" (Docket Entry 1) (the "Complaint") amended to include the allegations in the response to the Dismissal Motion (Docket Entry 14) (the "Response").

## BACKGROUND

Alleging violations of "Title VII of the Civil Rights Act of 1964" ("Title VII"), the "Age Discrimination in Employment Act of 1967" (the "ADEA"), and "The Civil Rights Act of 1991" (Docket

---

[1] For legibility reasons, this Opinion omits bold, all-cap, and underscored font in all quotations from the parties' materials.

Entry 1 at 3),[2] Dr. Monica A. Price (the "Plaintiff" or "Dr. Price") sued Defendant, her former employer. (See id. at 1-6.) According to the Complaint:

> [Plaintiff] began working for [Defendant] on or about September 16, 2022, as a Student Success Coach and Testing Coordinator. Student Success Coach and Testing Coordinator is the most recent position [Plaintiff] held.
>
> For the duration of [her] employment, [Plaintiff] feel[s] as though [she] ha[s] been treated less favorably and subjected to different terms and conditions of employment because o[f her] race, Black, and [her] age (54). In or around October, November, and December 2022, [Plaintiff] made several complaints to Human Resources about the discriminatory treatment toward [Plaintiff]. In or around January, February, March, and May of 2023, [Plaintiff] made additional complaints to Human Resources. [Plaintiff] do[es] not believe [her] allegations have been investigated and [Plaintiff] was continually being treated differently. On or about April 24, 2023, [Plaintiff] received a negative review. [Plaintiff] believe[s she] was reviewed negatively in retaliation for [her] aforementioned complaints regarding discrimination. In or around June 2023, [Plaintiff's] contract was not renewed. [Plaintiff] appealed the decision to not renew [her] contract through the Durham County School Board and the decision was upheld. [Plaintiff] believe[s her] contract was not renewed because of [her] aforementioned complaints, as well as [her] age and race.

(Id. at 6.) The Complaint further asserts:

> The wrongs against . . . Plaintiff[] are continuing until this date being that [Plaintiff] continue[s] to have to report to other educational entities that [her] contract was non-renewed due to [Plaintiff] being accused of being a non-diversity friendly employee. [Plaintiff] was recommended for several positions, but at the point that [a] reference was requested from [Defendant], the employment opportunity was denied. The actual damages on

---

[2] Docket Entry page citations utilize the CM/ECF footer's pagination.

> [Plaintiff's] personal property, pain and suffering, reputation, [sic] are still being accrued and [Plaintiff's] personal property loss is still of issue.

(Id. at 4.)

Defendant moved to dismiss the Complaint "pursuant to Rule 12(b) of the Federal Rules of Civil Procedure" (the "Rules"). (Docket Entry 9 at 1.) Per the Dismissal Motion, "Plaintiff has failed to exhaust her administrative remedies and has failed to state any claims upon which relief may be granted. As a result, Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6)." (Id.) Notably, ignoring the Complaint's assertions regarding retaliation and violation of the Civil Rights Act of 1991 (see Docket Entry 1 at 3-4, 6), Defendant's memorandum in support of the Dismissal Motion maintains that "Plaintiff's Complaint attempts to allege two claims (1) race discrimination in violation of Title VII and (2) age in discrimination in violation of the [ADEA]" (Docket Entry 10 at 1). Defendant accordingly limits its dismissal arguments to Plaintiff's claims for race and age discrimination under Title VII and the ADEA. (See, e.g., id. at 4-7 (arguing for dismissal of Plaintiff's VII and ADEA discrimination claims).)

Less than twenty-one days after Defendant filed the Dismissal Motion, Plaintiff filed the Response. (Compare Docket Entry 9 at 2, with Docket Entry 14 at 1.) Addressing the challenged claims, the Response provides significant factual detail in support of

3

Plaintiff's ADEA and Title VII discrimination claims. (See Docket Entry 14 at 1-7.) For instance, the Response explains "that the prejudicial behavior of [Plaintiff's] principal Mrs. Crystal Medlin[] interfered with [Plaintiff's] work and ultimately led to her dismissal" from her remote position at Ignite Online Academy notwithstanding that Plaintiff "is an expert on the digital divide and online learning." (Id. at 3.) According to the Response, Mrs. Medlin, inter alia, docked Plaintiff's pay and "presented information to Human Resources to support [Mrs. Medlin's] efforts to remove Dr. Price from her job," an act "in congruence with what is believed to be Mrs. Medlin's overall desire to replace Dr. Price with a Caucasian, female colleague" (id.; see also id. at 5 (discussing said colleague)). (See id. at 3-4.) The Response further asserts that "a warning letter was placed in Dr. Price's personnel file" (id. at 3) and that Plaintiff remained subject to an "incorrect performance rubric" that "did not seem to correspond with Dr. Price's duties as Student Success Coach and Testing Coordinator" (id. at 4).

Moreover, per the Response, "[s]hortly after Dr. Price had to go to DPS Human Resource for help, Mrs. Medlin began to get Dr. Price's African American colleagues to take over her work without her knowing[,] interfering with testing reporting duties." (Id. at 5.) The Response additionally identifies as "just a few of the specific examples of the prejudicial and inappropriate behavior by

4

Mrs. Medlin" (id. at 4) the following allegations related to Plaintiff's age and race discrimination claims:

> There are multiple, documented occasions where Dr. Price's actions were reprimanded, and her Caucasian colleagues' same actions were allowed and praised. Specifically, her Caucasian colleagues were allowed to conduct surveys to receive feedback, but when Dr. Price did the same, she was strongly reprimanded by Mrs. Medlin.
>
> Mrs. Medlin asked Dr. Price to present in a faculty learning community meeting and in the middle of the meeting, she told Dr. Price that she would not be using her data, would be taking over the meeting, and would be using the data of the Caucasian counterpart instead. However, Mrs. Medlin did not know that the data was practically identical except for a different color scheme change for organization and updates. Mrs. Medlin said in front of the group that Dr. Price's presentation was "colorful" but the Caucasian colleague's information was the one that she would use as correct.
>
> \*\*\*\*\*
>
> Mrs. Medlin stated that one of Dr. Price's Caucasian colleagues had done a great job with assisting with testing when Dr. Price had to be away on an occasion. She stated that the colleague had just had a baby and insinuated that the position would be good for her to work from home in the presence of Dr. Price.
>
> Dr. Price is not of the traditional child-bearing age, so Mrs. Medlin valued the colleague's age and childcare needs more than the need to have the flexibility to take care of Dr. Price's elderly parents.
>
> Dr. Price believes that skin color allowed Mrs. Medlin to identify who should be prioritized. She valued higher the needs of the Caucasian colleague to have Dr. Price's job. She has prejudicial beliefs that Dr. Price should not be in leadership, that Dr. Price's supposed inferiority would be the blame if things went wrong, and that Dr. Price should do as she was told even if it was untruthful.

(Id. at 4-5 (internal paragraph lettering omitted).)

In reply, Defendant maintains that Plaintiff's claims remain subject to dismissal for failure to exhaust administrative remedies. (See Docket Entry 15 (the "Reply") at 1-2.) The Reply further asserts that "[t]he additional factual allegations raised for the first time in Plaintiff's Response still do not state a colorable claim under Title VII or the ADEA." (Id. at 2.) Defendant thus urges the Court to grant the Dismissal Motion. (See id. at 3.)

## DISCUSSION

### I. Relevant Standards

### A. Rule 12(b)(6)

A Rule 12(b)(6) motion "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (emphasis added).[3] Accordingly, in reviewing a Rule 12(b)(6) motion, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Maryland Ct. of App., 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub nom., Coleman v. Court of App. of Md., 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon

---

3 As such, "claims lacking merit may be dealt with through summary judgment under Rule 56" rather than through a Rule 12(b)(6) motion. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514 (2002).

6

Indus., Inc._, 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted). Moreover, a pro se complaint must "be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). Nevertheless, the Court "will not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc., 707 F.3d 451, 455 (4th Cir. 2013) (internal quotation marks omitted); see also Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (explaining that the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine [the] requirement that a pleading contain more than labels and conclusions" (internal quotation marks omitted)). The Court can also "put aside any naked assertions devoid of further factual enhancement." SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015), as amended on reh'g in part (Oct. 29, 2015) (internal quotation marks omitted).

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's

7

liability for the alleged misconduct.  See id.  The complaint need not contain detailed factual recitations, but must provide the defendant "fair notice of what the claim is and the grounds upon which it rests."  Twombly, 550 U.S. at 555 (internal quotation marks and ellipsis omitted).  Thus, although a plaintiff must allege sufficient facts "to state all the elements of her claim," Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003), she need not plead facts constituting a McDonnell Douglas prima facie case of discrimination to survive a motion to dismiss, see Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514-15 (2002) (analyzing Title VII and ADEA claims).

## B. Title VII Standards

Under Title VII, it constitutes "an unlawful employment practice for an employer," inter alia, "to discharge any individual, or otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).[4]  For Title VII purposes, liability attaches if "race . . . was a motivating factor" for the challenged "employment practice, even though other factors also motivated the practice."  42 U.S.C. § 2000e-2(m); see also Kortor v. Forest at Duke, No. 1:23cv834, 2024 WL 4367185, at *4 (M.D.N.C. Sept. 30,

---

4  Title VII "also prohibits retaliation against persons who assert rights under [Title VII]."  Fort Bend Cnty. v. Davis, 587 U.S. 541, 543 (2019).

2024) ("An employer will be held liable for racial . . . discrimination if 'a protected characteristic [is] a "motivating factor" in an employment decision.'" (brackets in original) (quoting E.E.O.C. v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 773 (2015))). Accordingly, to state a Title VII discrimination claim, a "plaintiff must allege facts sufficient to raise a plausible inference that h[er] employer discharged [or otherwise treated her adversely in the terms or conditions of employment] because of h[er] race," Holloway v. Maryland, 32 F.4th 293, 299 (4th Cir. 2022) (analyzing Title VII unlawful discharge claim). See, e.g., Rageh v. University of N.C., No. 1:24cv336, 2024 WL 5056448, at *4 (M.D.N.C. Dec. 10, 2024) (analyzing Title VII discrimination claim and concluding that plaintiff "alleged sufficient facts to state a Title VII national origin discrimination claim to the extent that he bases his claim on denial of training opportunities").

**C. ADEA Standards**

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a). For an "age discrimination claim, [a plaintiff] must allege facts plausibly supporting the inference that (1) [s]he was 'over the age of 40,' (2) [s]he 'experienced discrimination by an employer,' and (3) the discrimination was 'because of h[er] age.'" Rageh, 2024 WL

9

5056448, at *2 (quoting Tickles v. Johnson, 805 F. App'x 204, 207 (4th Cir. 2020)). Moreover:

> Age must be the but-for cause of an adverse employment action, *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 67 (4th Cir. 2023), but a plaintiff "need not establish but-for causation to survive a motion to dismiss." *Lattinville-Pace v. Intelligent Waves LLC*, No. 22-1144, 2024 WL 1756167, at *1 (4th Cir. Apr. 24, 2024). "[A] plaintiff need only plead sufficient facts to plausibly support a claim of discrimination." *Id.*
>
> The adverse employment action does not need to be significant. *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024). Rather, a plaintiff need only allege "some injury respecting her employment terms or conditions." *Id.* at 359 (stating employee's allegations that she was transferred and given fewer responsibilities would constitute an adverse employment action even though her rank and pay remained the same); *see also Grant v. N.C. Dep't of Transp.*, No. 23-CV-702, 2024 WL 2789388, at *3 (E.D.N.C. May 30, 2024) (applying *Muldrow* to an ADEA claim).

Rageh, 2024 WL 5056448, at *2-3.

## II. Analysis

### A. Amendment

As an initial matter, Plaintiff filed the Response, which contains additional factual information regarding her Title VII and ADEA discrimination claims (see Docket Entry 14 at 1-7), less than twenty-one days after Defendant moved to dismiss those claims for lack of supporting factual allegations (see Docket Entry 10 at 5-7). (Compare Docket Entry 9 at 2, with Docket Entry 14 at 1.) Pursuant to Rule 15, "[a] party may amend its pleading once as a matter of course no later than," as relevant here, "21 days after service of a motion under Rule 12(b)." Fed. R. Civ. P.

10

15(a)(1)(B). Given that Plaintiff (i) possessed the right to amend her pleadings at the time she filed the Response and (ii) proceeds pro se, the Court will deem the Complaint amended to include the factual allegations in the Response.

Amending a complaint "normally moots a pending motion to dismiss." Flanagan v. Syngenta Crop Prot., LLC, No. 1:17cv202, 2017 WL 3328168, at *2 (M.D.N.C. Aug. 3, 2017). Here, however, Defendant addressed the Response in its Reply, arguing that the facts set out in the Response do not impact resolution of the Dismissal Motion. (See Docket Entry 15 at 2.) "Under the circumstances, the Court will 'consider the Dismissal Motion as being addressed to the [Complaint as deemed amended by the Response].'" Flanagan, 2017 WL 3328168, at *2 (brackets omitted) (quoting 6 Charles Alan Wright, et al., Federal Practice and Procedure § 1476 (3d ed. 2017)); see also Brumfield v. McCann, No. 2:12cv1481, 2013 WL 943807, at *2-3 (S.D. W. Va. Mar. 11, 2013) (granting motion to amend complaint, but concluding that court could still consider pending dismissal motions, and collecting cases).

### B. Administrative Exhaustion

Turning to the Dismissal Motion, Defendant asserts that the Court should dismiss Plaintiff's Title VII and ADEA discrimination

11

claims for lack of administrative exhaustion. (See, e.g., Docket Entry 10 at 5.)[5] This argument misses the mark.

"As a precondition to the commencement of a Title VII action in court, a complainant must first file a charge with the Equal Employment Opportunity Commission" (the "EEOC"), Fort Bend Cnty. v. Davis, 587 U.S. 541, 543 (2019); "[h]owever, '[p]rerequisites to suit like Title VII's charge-filing instruction are not' jurisdictional; rather, 'they are properly ranked among the array of claim-processing rules that must be timely raised to come into play,'" Bush v. Frederick Cnty. Pub. Schs., No. 23-1127, 2024 WL 639255, at *2 (4th Cir. Feb. 15, 2024) (quoting Davis, 587 U.S. at

---

[5] Rather than restricting its argument to the assertion that Plaintiff's pleadings did not mention or otherwise evidence the filing of a charge with the Equal Employment Opportunity Commission (the "EEOC"), Defendant's memoranda repeatedly maintain that "Plaintiff has not filed a charge of discrimination before the EEOC" (Docket Entry 15 at 2; see also Docket Entry 10 at 5 ("Plaintiff filed her Complaint alleging claims under Title VII and the ADEA without first raising her claim before the EEOC.")) and that, "'[b]ecause Plaintiff failed to file a charge of discrimination' with the EEOC, her Title VII and ADEA claims 'must be dismissed with prejudice'" (Docket Entry 10 at 5; accord Docket Entry 15 at 3). Notably, though, after Defendant filed the Reply, Plaintiff filed a copy of a Right to Sue letter from the EEOC dated long before Defendant filed the Dismissal Motion, addressed to Plaintiff with a "Cc:" to Defendant's address. (See Docket Entry 16 at 1-5; see also Docket Entry 1 at 2.) Although consideration of the Dismissal Motion will remain focused on the Complaint as amended by the Response, see, e.g., E.I. du Pont, 637 F.3d at 448, this filing calls into serious question the veracity of Defendant's assertion that "Plaintiff has not filed a charge of discrimination before the EEOC" (Docket Entry 15 at 2). Defendant's counsel should take care to ensure the accuracy of representations made to the Court. See Six v. Generations Fed. Credit Union, 891 F.3d 508, 519 (4th Cir. 2018).

12

543-44).[6]  "That is, a defendant must raise this issue as an affirmative defense." Id. Moreover, "the burden of establishing the affirmative defense rests on the defendant." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc).

Importantly, a Rule 12(b)(6) motion "generally cannot reach the merits of an affirmative defense." Id. Thus,

> a Rule 12(b)(6) motion to dismiss, which addresses the sufficiency of the complaint, generally does not enable the [C]ourt to determine whether the exhaustion requirement has been satisfied or whether it has been waived or should be excused, because exhaustion is treated as an affirmative defense. When, however, facts sufficient to rule on an affirmative defense[,] such as exhaustion[,] are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). But this principle applies only in the relatively rare circumstances when all facts necessary to the affirmative defense clearly appear on the face of the complaint. And even to succeed in these rare circumstances, the defendant must show that the plaintiff's potential response to the affirmative defense was foreclosed by the allegations in the complaint.

L.N.P. v. Kijakazi, 64 F.4th 577, 585-86 (4th Cir. 2023) (brackets, citations, and internal quotation marks omitted).

Here, the Complaint and Response lack any information regarding whether Plaintiff filed a charge with the EEOC. (See Docket Entries 1, 14.) Accordingly, the Court does not confront "the relatively rare circumstance[] where . . . . all facts necessary to the affirmative defense clearly appear *on the face of*

---

[6] "Courts in the Fourth Circuit have applied Davis to the ADEA, which has a similar administrative exhaustion requirement." Yang v. Lai, No. 1:22cv5, 2022 WL 2440834, at *3 (M.D.N.C. July 5, 2022).

13

*the complaint,"* Goodman, 494 F.3d at 464 (brackets and internal quotation marks omitted) (emphasis in original), precluding Rule 12(b)(6) relief on this ground, see id. at 466. The Court should therefore reject Defendant's administrative exhaustion argument.

### C. Discrimination Claims

Defendant also contends that "Plaintiff fails to state . . . colorable [Title VII and ADEA discrimination] claim[s]." (Docket Entry 10 at 5.) In particular, Defendant asserts that "the Complaint is entirely devoid of any allegations of a connection between any alleged discriminatory treatment and any alleged adverse employment action." (Id. at 6.) As discussed above, Plaintiff responded to this contention by offering additional factual allegations in support of the challenged claims. (See Docket Entry 14 at 1-7.) Nevertheless, the Reply maintains that "[t]he additional factual allegations raised for the first time in Plaintiff's Response still do not state a colorable claim under Title VII or the ADEA." (Docket Entry 15 at 2.) This argument falls short.

As an initial matter, Defendant fails to develop its argument regarding the Response's purported deficiencies. Instead, as the final paragraph in its "Argument" section, which (i) contains a singular heading proclaiming that "Plaintiff's Response to the [Dismissal Motion] does not address her failure to exhaust administrative remedies" (id. at 1) and (ii) otherwise focuses

14

exclusively on administrative exhaustion (see id. at 1-2), the Reply asserts:

> The additional factual allegations raised for the first time in Plaintiff's Response still do not state a colorable claim under Title VII or the ADEA. Even if they could establish such a claim, which they cannot, they are allegations that must be brought before the EEOC before Plaintiff may file suit in federal court. *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) ("It is well settled that before filing suit under Title VII or the ADEA, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." (citing 42 U.S.C. § 2000e-5(b), (f); 29 U.S.C. § 633a(d))).

(Docket Entry 15 at 2.)

"It is not the Court's job to undertake the analysis and legal research needed to support a perfunctory argument, nor should a party expect [the C]ourt to do the work that [the party] elected not to do." Hill v. Carvana, LLC, No. 1:22cv37, 2022 WL 1625020, at *5 (M.D.N.C. May 23, 2022) (citation and internal quotation marks omitted). The failure to develop this argument alone justifies its denial. See, e.g., Sanders v. Colvin, No. 1:14cv163, 2015 WL 471588, at *8 (M.D.N.C. Feb. 4, 2015) (observing that, because party failed to develop argument, "[t]he Court could deny relief on that ground alone," and collecting cases), report and recommendation adopted, No. 1:14cv163, 2015 WL 12564213 (M.D.N.C. Mar. 6, 2015); see also Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument . . . by failing to develop its argument — even if its brief takes a passing

15

shot at the issue." (brackets and internal quotation marks omitted)).

In any event, construed liberally in light of Plaintiff's pro se status, see Erickson, 551 U.S. at 94, and with all reasonable inferences drawn in her favor, see E.I. du Pont, 637 F.3d at 440, the Complaint as deemed amended by the Response plausibly alleges Title VII and ADEA discrimination claims. The Complaint identifies Plaintiff as a "Black" woman aged "54" who worked "as a Student Success Coach and Testing Coordinator" for Defendant between September 2022 and June 2023, when "[her] contract was not renewed." (Docket Entry 1 at 6.) According to the Response, her role at Ignite Online Academy allowed Plaintiff, "an expert on the digital divide and online learning," "to work remotely" until "the prejudicial behavior of her principal Mrs. Crystal Medlin[] interfered with [Plaintiff's] work and ultimately led to her dismissal." (Docket Entry 14 at 3.) As examples of this conduct, the Response asserts that, on multiple occasions, Plaintiff's "actions were reprimanded," but "her Caucasian colleagues' same actions were allowed and praised," including specifically on the use of "surveys to receive feedback." (Id. at 4.) The Response further asserts that, in the middle of Plaintiff's presentation at a faculty learning community meeting, Mrs. Medlin "told [Plaintiff] that [Mrs. Medlin] would not be using [Plaintiff's] data, would be taking over the meeting, and would be using the data of the

16

Caucasian counterpart instead," even though "the data was practically identical except for a different color scheme change for organization and updates." (Id. at 4-5; see also id. at 5 ("Mrs. Medlin said in front of the group that [Plaintiff's] presentation was 'colorful' but the Caucasian colleague's information was the one that she would use as correct.").)

Moreover, per the Response, Mrs. Medlin (i) praised the work of one of Plaintiff's "Caucasian colleagues" who "assist[ed] with testing when [Plaintiff] had to be away on an occasion" and (ii) "stated that the colleague had just had a baby and insinuated that [Plaintiff's] position would be good for [the colleague] to work from home in the presence of [Plaintiff]." (Id. at 5.) The Response maintains that, as Plaintiff "is not of the traditional child-bearing age, . . . Mrs. Medlin valued the colleague's age and childcare needs more than [Plaintiff's] need to have the flexibility to take care of [her] elderly parents." (Id.) Additionally, according to the Response, Mrs. Medlin "presented information to Human Resources to support her efforts to remove [Plaintiff] from her job," an action "in congruence with what is believed to be Mrs. Medlin's overall desire to replace [Plaintiff] with [that] Caucasian, female colleague." (Id. at 3.)

"These allegations plausibly allege that Plaintiff's race and [age] directly resulted in her being treated differently from other employees and that she was specifically targeted for adverse

17

treatment because of these characteristics, resulting eventually in her termination . . . ." Kortor, 2024 WL 4367185, at *4; see also Raqeh, 2024 WL 5056448, at *3 (concluding that the plaintiff "alleged sufficient facts to state an ADEA discrimination claim based on denial of training opportunities," where "[h]e alleges that he was over 40 years old during his fellowship, and that Dr. Zhang, who supervised [the plaintiff] on behalf of [the defendant], provided him with fewer training opportunities than younger residents, eventually refusing to train him," after "express[ing] concerns about [the plaintiff's] age before his fellowship even started" (citations omitted)). Accordingly, Plaintiff's Title VII and ADEA discrimination claims survive Defendant's Rule 12(b)(6) challenge. The Court should therefore deny the Dismissal Motion. See, e.g., Holloway, 32 F.4th at 299 (vacating Rule 12(b)(6) dismissal of unlawful termination claim, "find[ing] the[ alleged] facts sufficient to raise the inference of a Title VII violation above a speculative level," even though "[the] complaint [wa]s thin on facts (as opposed to conclusions) suggesting racial motivation," as "[its] pretext allegations . . . support[ed] an inference of race discrimination" (internal quotation marks omitted)).

## CONCLUSION

Given the timing of Plaintiff's assertion of additional factual allegations and her pro se status, the Court will deem her pleadings amended. Given that amendment, Plaintiff plausibly

18

alleges Title VII and ADEA claims for race and age discrimination. Additionally, Defendant's administrative exhaustion argument fails at this stage of the proceedings.

**IT IS THEREFORE ORDERED** that the Complaint (Docket Entry 1) is **DEEMED AMENDED** to include the factual allegations in the Response (Docket Entry 14).

**IT IS RECOMMENDED** that the Court deny the Dismissal Motion (Docket Entry 9).

This 18th day of February, 2025.

> /s/ L. Patrick Auld
> **L. Patrick Auld**
> **United States Magistrate Judge**